UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | SA-23-CR-537-OLG (HJB) |
| § | |
| ROBERT COPE, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Dismiss 18 U.S.C. § 922(a)(6) Indictment. (Docket Entry 46.) The District Court has referred the motion to the undersigned for consideration and recommended disposition. (Text Order: May 19, 2025.) The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). For the reasons set out below, I recommend that Defendant's motion (Docket Entry 46) be **DENIED**.

**I.      Background.**

On October 18, 2023, a federal grand jury returned a three-count indictment against Defendant Robert Cope, for three discrete violations of 18 U.S.C § 922(a)(6). (Docket Entry 3.) The statute makes it a crime for any person, in purchasing or attempting to purchase a firearm from a licensed firearms dealer, to make any false statement "with respect to any fact material to the lawfulness of the sale." 18 U.S.C. § 922(a)(6). The indictment alleges that Cope attempted to purchase firearms on three separate occasions from licensed firearms dealers—January 28, 2023, February 27, 2023, and July 20, 2023, respectively. (Docket Entry 3, at 1–3.) In attempting to

make each such purchase, Cope was required to fill out a document called an ATF Form 4473, which licensed firearms dealers are required to submit to the FBI for purposes of conducting a criminal background check.[1]  (*Id.*)  And in completing the ATF Form 4473 on each of the three occasions, the indictment alleges, Cope "knowingly made a false and fictious written statement . . . as to a fact material to the lawfulness of [the sale], . . . [by] represent[ing] that he had never been convicted of a felony offense, when in fact he well knew that he had been convicted of at least one felony offense,  (*Id.*)  This false statement would be material to a fact concerning the lawfulness of the sale under 18 U.S.C. § 922(g)(1), which makes it "unlawful for any person who has been convicted of a felony to possess . . . [a] firearm."  *Nieto Hernandez v. Holder*, 592 F.3d 681, 683 (5th Cir. 2009).

In his motion, Cope contends that his alleged statements in the ATF Form 4473 regarding the lack of a prior felony conviction were "not 'material to the lawfulness' of any gun-purchase attempt."  (Docket Entry 46, at 1.)  The statements were not material, he argues, because § 922(g)(1) is unconstitutional—both facially and as applied to him.  (*Id.*)  In other words, because the Government could not restrict Cope's right to purchase and possess firearms based on his prior felony conviction, his false representation that he had never been convicted of a felony could not have been material to the lawfulness of his attempted gun purchases.

The Government has responded in opposition to Cope's motion.  (*See* Docket Entry 49.)

---

[1] *See* https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics (last visited May 19, 2025); https://www.atf.gov/firearms/atf-form-4473-firearms-transaction-record-revisions (last visited May 19, 2025).

2

**II.     Discussion.**

Cope concedes that his facial challenge to § 922(g)(1) is foreclosed by binding Fifth Circuit precedent. (Docket Entry 46, at 7–10). *See, e.g.*, *United States v. French*, 121 F.4th 538 (5th Cir. 2024) ("[Section] 922(g)(1) . . is facially constitutional."). Accordingly, this Report and Recommendation addresses only his as-applied challenge to § 922(g)(1) for purposes of his § 922(a)(6) prosecution. Furthermore, this Report and Recommendation assumes, for purposes of argument, that a false statement about a prior felony conviction would not be material under § 922(a)(6) if that prior conviction would not provide a constitutional basis for disarming the felon under the Second Amendment. *See United States v. Quiroz*, 125 F.4th 713, 725 (5th Cir. 2025) ("The district court concluded that because § 922(n) is unconstitutional, the § 922(a)(6) charge should be dismissed because [the] false statement about not being under indictment was immaterial[,] [but] [b]ecause we hold that § 922(n) does not violate the Second Amendment, we reverse the district court's dismissal of the § 922(a)(6) charge."); *but see United States v. Holden*, 70 F.4th 1015, 1018 (7th Cir. 2023) (Easterbrook, J.) ("People cannot engage in self help by telling lies to avoid the inquiry whether § 922(n) may properly apply to them; they must tell the truth and seek judicial relief on the ground that § 922(n) would be invalid with respect to them, in particular."). Even under this assumption, however, Cope's argument fails.

The Second Amendment "protects the right of individuals to 'keep and bear' firearms for their self-defense." *United States v. Daniels*, 124 F.4th 967, 972 (5th Cir. 2025) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)). "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Quiroz*, 125 F.4th at 716 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)). A regulation of such presumptively protected conduct runs afoul of the Second Amendment unless

3

it "is consistent with the principles that underpin [the Nation's] regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

Felonies were understood at the Founding as "offence[s] which occasion[] a total forfeiture of either lands, or goods, or both, . . . and to which capital or other punishment must be superadded, according to the degree of guilt."  4 W. BLACKSTONE, COMMENTARIES *95 (1st ed. 1769).  "The idea of felony [wa]s so generally connected with that of capital punishment," that founding-era Americans would have found it "hard to separate them."  *Id.* at *98.  Indeed, "death was 'the standard penalty for all serious crimes' at the time of the founding." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019) (quoting STUART BANNER, THE DEATH PENALTY: AN AMERICAN HISTORY 23 (2002)); *see Tennessee v. Garner*, 471 U.S. 1, 13 (1985) (noting that "virtually all felonies were punishable by death" at the time of the founding); 4 W. BLACKSTONE, COMMENTARIES *98 (noting that founding-era executions of felons were so ubiquitous that, "if a statute ma[d]e any new offence a felony, the law implie[d] that it shall be punished with death . . . as well as with forfeiture. . . .").

Despite the serious penalties associated with felony convictions at the time that the Second Amendment was enacted, the Fifth Circuit has held that not all prior felony convictions deprive persons of their right to bear firearms.  This is because "[m]any crimes classified as misdemeanors, or nonexistent, at common law are now felonies." *United States v. Diaz*, 116 F.4th 458, 468 (5th Cir. 2024) (quoting *Garner*, 471 U.S. at 13).  Thus, the fact that Cope is a felon today "does not necessarily mean that he would have been one in the 18th century." *Diaz*, 116 F.4th at 469.  Instead, under Fifth Circuit law, to address Cope's Second Amendment argument, the Court must determine whether the felony for which he was previously convicted is sufficiently analogous to a founding era felony punishable by death or estate forfeiture.  *See id.* at 468–69.

4

Cope's prior felony conviction is for homicide—specifically, aggravated manslaughter of an elderly or disabled adult, a first-degree felony in Florida. FLA. STAT. ANN. § 782.07(2). (Docket Entry 49-1, at 3.) By 1777, manslaughter "had long been [a] capital [offense]" in the American colonies. BANNER, *supra*, at 95–96. That year, "Virginia's legislature considered limiting capital crimes to only treason and murder, . . . . [but] the bill was defeated in the legislature in 1785." *Quiroz*, 125 F.4th at 720 (citing BANNER, *supra* 95–96) (emphasis added). Pennsylvania was the first State to reform its penal code, in 1786, "abolish[ing] capital punishment for robbery, burglary, sodomy, and buggery," but retaining the death penalty for "treason, *manslaughter*, rape, arson, and counterfeiting" for another eight years. *Id.* (quoting BANNER, *supra*, at 97–98) (emphasis added).[2]

In short, Cope's manslaughter conviction not only would have been a felony in 1791, but would have been punishable by death at that time. And because "capital punishment was permissible [at the Founding], . . . the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Diaz*, 116 F.4th at 469; *cf. Rahimi*, 602 U.S. at 699 ("[I]f imprisonment was permissible [at the Founding], . . . then the lesser restriction of temporary disarmament that [§] 922(g)(8) imposes is also permissible.").[3]

---

[2] It was not until 1794—three years after the Second Amendment's ratification—that Pennsylvania became the first state to replace the death penalty with prison sentences as the punishment for those convicted of manslaughter. BANNER, *supra*, at 98. And while other states "followed suit in the years after the ratification," *Quiroz*, 125 F.4th at 720 (citing BANNER, *supra*, at 98–99), such post-ratification developments are ultimately immaterial. What matters is "the understanding of the Second Amendment *when it was ratified*." *Quiroz*, 125 F.4th at 720 (emphasis added); *see also Bruen*, 597 U.S. at 34 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.") (emphasis omitted) (quoting *Heller*, 554 U.S. at 634–35)).

[3] Cope argues that *Diaz* was wrongly decided for a number of reasons. (Docket Entry 46, at 5–6.) Such arguments are foreclosed (as Cope acknowledges). *See United States v. Schnur*, 684 F. Supp. 3d 522, 526 (S.D. Miss. 2023) ("[A] district court is not free to overturn decisions of the Fifth Circuit[;] th[at] authority . . . lies with the Fifth Circuit alone.") (citation and internal quotation marks omitted), *aff'd*, 132 F.4th 863 (5th Cir. 2025).

5

Additionally, the Fifth Circuit has recently held that § 922(g)(1) is constitutional as applied to persons convicted of violent felonies for another reason: *dangerousness*. In *United States v. Bullock*, the Fifth Circuit held that "legislatures have the power to prohibit dangerous people from possessing guns," and specifically concluded that "manslaughter . . . constitute[s] [a] dangerous and violent crime [ ]." 123 F.4th 183, 185 (5th Cir. 2024). The Fifth Circuit thus held that a person convicted of manslaughter could "be constitutionally dispossessed of a firearm pursuant to 18 U.S.C. § 922(g)(1)," at least when a firearm was used in the commission of the offense. *Id.* In *United States v. Schnur*, the Court extended this reasoning, finding that it makes no difference to the constitutionality of § 922(g)(1) whether a firearm was involved in the prior violent offense. 132 F.4th 863, 870 (5th Cir. 2025); *see also United States v. Betancourt*, 139 F.4th 480, 483 (5th Cir. 2025) (affirming denial of felon's as-applied challenge to § 922(g)(1) based on aggravated assault conviction for "driving at . . . 107 miles per hour, . . . . [and] disregard[ing] a flashing red light and caus[ing] a major collision."). Although Cope suggests that § 922(g)(1) cannot be justified as applied to him based on dangerousness (*see* Docket Entry 46, at 7), he makes no arguments to support that conclusion, and such arguments would be foreclosed by *Bullock, Schnur*, and *Betancourt*.

Accordingly, § 922(g)(1) does not violate the Second Amendment as applied to Cope. Based on his felony conviction for aggravated manslaughter, Cope was lawfully barred from possessing a firearm when he attempted to make the three gun purchases at issue in this case. Falsely representing in each of the ATF Forms 4473 that he had never been convicted of a felony was thus material to the lawfulness of his attempted gun purchases. *See* 18 U.S.C. § 922(a)(6).

**III.     Conclusion and Recommendation.**

Based on the foregoing, I recommend that Cope's Motion to Dismiss 18 U.S.C. § 922(a)(6) Indictment (Docket Entry 46) be **DENIED**.

**IV.     Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  Absent leave of Court, **objections are limited to 20 pages in length**.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered."  *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

on appeal the unobjected-to, proposed findings and conclusions accepted by the district court.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on July 3, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge